RANDALL E. LANGEMEIER, APPELLEE, V. URWILER OIL & FERTILIZER, INC., AND CARDINAL MART INC., APPELLANTS.

613 N.W. 2d 435

Filed June 30, 2000.   No. S-99-482.

George H. Moyer, Jr., of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellants.

Vince Kirby for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Urwiler Oil & Fertilizer, Inc. (Urwiler Oil), and Cardinal Mart Inc. (collectively referred to as "defendants") appeal the order of the district court for Cedar County granting Randall E.

Langemeier, as seller, specific performance of a real estate purchase agreement and compelling defendants, as buyers, to comply with the terms of such purchase agreement. For the reasons set forth below, we vacate the decision of the district court and dismiss the appeal.

## STATEMENT OF FACTS

On June 27, 1995, Langemeier and Urwiler Oil entered into a purchase agreement for the following described real property:

> That part of Outlot One (1) of Second Addition to the City of Randolph, Cedar County, Nebraska, described as follows: Beginning at the Northwest corner of Block 2, Second Addition; Thence North 134 feet to the point of beginning; Thence East at right angles 162 feet; Thence South at right angles 18 feet; Thence East at right angles 150 feet; Thence North at right angles 230 feet to the South line of Federal Highway No. 20; Thence Southwesterly along the South line of Federal Highway No. 20; Thence to a point where the East line of Cedar Street in the City of Randolph, as extended North, intersects the South line of Federal Highway No. 20; Thence South along the East line of Cedar Street to the point of beginning, all in the City of Randolph, Cedar County, Nebraska.

Langemeier operated a convenience store on the foregoing described property, sometimes referred to as the "Mini Mart." The purchase agreement included all fixtures on the property together with all personal property "on premises on date of acceptance of [the purchase] agreement—list to be attached." The purchase agreement which appears in the record does not have attached to it a list identifying the personal property. The sale price was $125,000, with a $1,000 downpayment, leaving a purchase price balance of $124,000. The sale was conditioned on Langemeier's having marketable title, in fee simple, and Langemeier's conveyance of title to Urwiler Oil by warranty deed "free and clear of all liens, encumbrances or special taxes levied or assessed."

Pursuant to the purchase agreement, Langemeier agreed to furnish to Urwiler Oil, within 15 days from the date of acceptance of the purchase agreement, either a complete, certified

abstract of title or title insurance. Urwiler Oil agreed to deliver, 15 days thereafter, a copy of an attorney's opinion showing any defects in the title. Urwiler Oil further agreed under the purchase agreement to close the sale within 30 days of the delivery of the title abstract or title insurance, unless defects were found, or, in the event defects were found, within 10 days of the curing of such defects.

On June 19, 1995, a title insurance commitment was prepared on the subject property. The commitment listed several matters with regard to the title, summarized as follows:

(1) Langemeier and Vickie Langemeier were divorced on May 24, 1984, and Langemeier claimed to have been awarded the convenience store and the property on which it was situated in the divorce decree. The title insurance company required a quitclaim deed from Vickie Langemeier because the real property awarded to Langemeier in the Langemeiers' divorce decree was identified by only a general description and not by a legal description.

(2) On February 7, 1989, Rodney Zwygart had sued Langemeier, claiming to be Langemeier's business partner with an undivided one-half interest in the partnership's assets. In the lawsuit, Zwygart sought a division of partnership assets, which assets allegedly included the convenience store. The title insurance company refused to issue title insurance against the litigation, which litigation it considered an exception to title insurance because the litigation had not reached a judgment.

Counsel for Urwiler Oil received a copy of the title insurance commitment on or about June 20, 1995. No written attorney's opinion was sent to Langemeier by Urwiler Oil identifying title defects in the property that was the subject of the purchase agreement, although representatives of defendants testified that they had numerous conversations with Langemeier and his attorney about resolving the matters raised in the title insurance commitment, including the pending litigation case, Zwygart v. Langemeier, Cedar County District Court, docket No. 29, page 45, which matters they believed created clouds on the title.

On August 4, 1995, Zwygart filed a notice of lis pendens. The notice set forth that Zwygart claimed an interest in the real estate described in the notice, which interest was the subject of

the pending lawsuit between Zwygart and Langemeier. The notice contained a faulty legal description of the property which was the subject of the purchase agreement.

Cardinal Mart was incorporated as a Nebraska corporation on or about August 15, 1995. Of Cardinal Mart's three shareholders, two are also shareholders in Urwiler Oil. Cardinal Mart took possession of the real estate described in the purchase agreement on August 15 and began operating the convenience store. As of August 15, Langemeier ceased to operate or do business as the Mini Mart.

A closing on the purchase agreement was scheduled for August 18, 1995, but Langemeier did not appear at the closing because he understood it was cancelled due to the existing clouds on the title. Representatives of defendants, however, did appear at the scheduled closing. No closing took place on the purchase agreement on August 18 or subsequent thereto. In August and September, nominal payments were made by Cardinal Mart to Langemeier, which payments Cardinal Mart's representatives described as rent payments. Witnesses testified at trial that the parties continued to discuss the sale and the title matters during August, September, and October.

On October 17, 1995, defendants' counsel notified Langemeier by letter that defendants were rescinding their offer to purchase the property described in the purchase agreement. On November 22, counsel for defendants notified Langemeier that on November 22, defendants had terminated their day-to-day tenancy of the convenience store and had removed or assigned to Cardinal Mart all inventory.

On November 9, 1995, Langemeier filed his petition for specific performance of the purchase agreement against defendants. On December 1, 1998, and continuing on December 2, a bench trial was held on Langemeier's amended petition filed on March 11, 1996, together with Urwiler Oil's second amended answer to the petition, filed June 22, and Cardinal Mart's fourth amended answer to the petition, filed August 27, 1998.

Langemeier admitted at trial on December 1, 1998, that he no longer owned the property described in the purchase agreement, which is the subject of the instant action, and that the property was owned by his mother, Joann Langemeier. Langemeier testi-

fied, however, that he could carry out the terms of the purchase agreement and transfer title to the property the same day or the very next day. The record is unclear when Joann Langemeier acquired title to the property. Joann Langemeier was not a party to the case.

With respect to the divorce decree, Langemeier testified that on August 15, 1995, an order nunc pro tunc had been entered by the district court in the divorce action, which order identified the real property awarded to Langemeier under the divorce decree using legal descriptions, including the property on which the convenience store was located. The record suggests that the nunc pro tunc order may have been issued without notice to Vickie Langemeier.

With respect to the Zwygart litigation, Langemeier testified that the litigation was resolved in December 1995. The record in the instant appeal does not contain evidence other than Langemeier's testimony that the Zwygart lawsuit has been concluded.

Other witnesses testified that subsequent to the filing of the petition for specific performance, a federal tax lien and a judgment lien had been placed on the real estate that was the subject of the purchase agreement. The record further indicates that a mortgage on the real estate had been foreclosed and that the property had been sold. Before the sale was approved, however, Langemeier had redeemed the property from the foreclosure sale, evidently with funds supplied by his mother, Joann Langemeier.

On April 2, 1999, the district court made its docket entry, granting Langemeier specific performance as requested in his petition and ordering the parties to perform the purchase agreement as written. Defendants appeal.

## ASSIGNMENTS OF ERROR

On appeal, defendants have assigned two errors. Defendants claim the district court erred (1) in ordering specific performance of the purchase agreement and (2) in overruling defendants' motion to dismiss made at the conclusion of Langemeier's case. Because we resolve this appeal on the basis of the first assignment of error, we do not comment on defendants' second assignment of error.

## STANDARD OF REVIEW

An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996); *Snowdon Farms v. Jones*, 8 Neb. App. 445, 595 N.W.2d 270 (1999).

## ANALYSIS

Langemeier, as seller, filed the instant case seeking to compel defendants' specific performance of the purchase agreement, by which action defendants would be ordered by judicial decree to purchase the property described in the purchase agreement from Langemeier and otherwise to comply with the terms of the purchase agreement. In their first assignment of error, defendants claim that the district court erred in ordering specific performance for numerous reasons, including that the district court was without jurisdiction to grant Langemeier the relief requested in his amended petition due to the absence of a necessary, indispensable party from the litigation. We agree with defendants that the district court erred in granting specific performance in this case in the absence of Joann Langemeier, titleholder of the subject property.

In reviewing the record, we note that Langemeier no longer owns the property which is the subject of the purchase agreement and that his mother, Joann Langemeier, now owns the subject property. Although Langemeier testified that he could still comply with the terms of the purchase agreement, Joann Langemeier, as the current owner of the property which is the subject of this specific performance action, has an interest in the real estate and is a necessary party in order for the district court to consider Langemeier's amended petition for specific performance.

The presence of necessary parties is jurisdictional and cannot be waived, and if such persons are not made parties, then the district court has no jurisdiction to determine the controversy. *Robertson v. School Dist. No. 17*, 252 Neb. 103, 560 N.W.2d 469 (1997). See, also, *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997).

With regard to necessary parties to a specific performance action, the following has been recognized:

> The fundamental rule that all persons whose rights will be directly affected by a decree in equity must . . . be joined as parties plaintiff or defendant in order that complete justice may be done and that there may be a final determination of the rights of all parties interested in the subject matter of the controversy, governs the question of parties in suits for specific performance. All persons interested in the contract or the property involved in the suit, or whose interests therein may be affected by the decree, are necessary parties and should be made parties to the specific performance suit—otherwise, the court ordinarily will not enter a decree of specific performance.

71 Am. Jur. 2d *Specific Performance* § 189 at 242 (1973). See, also, *In re Estate of Layton*, 212 Neb. 518, 323 N.W.2d 817 (1982) (in specific performance action, persons claiming title to lands are indispensable parties).

In *James J. Parks Co. v. Lakin*, 206 Neb. 184, 292 N.W.2d 21 (1980), we considered the effect of the absence of necessary parties to a specific performance action in which the plaintiff sought an order directing the defendant to repurchase land. In *James J. Parks Co.*, the plaintiff filed an action seeking specific performance of a repurchase agreement. The plaintiff had purchased 303 acres of citrus grove land from the defendant, and under the repurchase agreement, the plaintiff could, at its election, require the defendant to repurchase the property upon 30 days' notice. During the time period between the execution of the repurchase agreement and the filing of the specific performance action, other parties had acquired interests in portions of the property subject to the repurchase agreement. The district court dismissed the plaintiff's action.

In affirming the district court's dismissal of the plaintiff's petition for specific performance in *James J. Parks Co.*, we stated that "[a] party seeking specific performance must show his right to the relief sought, including proof that he is ready, able, and willing to perform his obligations under the contract." 206 Neb. at 188, 292 N.W.2d at 24. We noted that under the record on appeal, the fact that others had acquired interests in

the property made unclear the extent of the plaintiff's interest in the property that was the subject of the repurchase agreement. We made the following further observations:

> An equitable right may not be properly asserted in an action unless all of the necessary parties have been made parties to the action. . . .

> An indispensable party is one who not only has an interest in the subject matter of the controversy, but who has an interest of such a nature that a final determination cannot be made without affecting his rights, or leaving the controversy in such condition that the final determination may be wholly inconsistent with equity and good conscience.

*Id.* at 188-89, 292 N.W.2d 24-25. See, similarly, *Johnson v. Mays*, 216 Neb. 890, 346 N.W.2d 401 (1984). We affirmed the district court's dismissal of the plaintiff's petition for specific performance in *James J. Parks Co.*, because we determined that based upon the evidence, there were indispensable parties who were not joined in the action, that these parties were not identified in the record, and that their identities and ownership interests were unknown, making an appellate order of joinder impossible.

In the instant case, it is apparent that Joann Langemeier has an interest in the subject property. Since her identity is known, her absence from the litigation can be solved by entry of an order by the district court ordering her to be added as a party. See Neb. Rev. Stat. § 25-323 (Reissue 1995) (when determination of controversy cannot be had without presence of other parties, court must order them to be brought in). Defendants claim on appeal that there exist other parties with an interest in the subject property whose presence is required for a final determination of the subject matter of the action. We cannot determine from the record on appeal the validity of defendants' contention, and we, therefore, do not comment on it. Based on the foregoing, we vacate the order of the district court granting Langemeier specific performance and dismiss the appeal.

## CONCLUSION

In an action for specific performance of a real estate purchase agreement, it is fundamental that all persons with an interest in

the real estate that is the subject of the purchase agreement, whose rights to the real estate may be affected by the specific performance action, be made parties to the lawsuit. In the absence of an indispensable party, the district court is without jurisdiction to determine the controversy. For the reasons stated above, we vacate the order of the district court granting Langemeier specific performance and dismiss the appeal.

VACATED AND DISMISSED.

GERRARD, J., not participating.