Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/26/2021 08:08 AM CDT

Latonne Davis, appellee, v.
Victoria E. Moats, appellant.

___ N.W.2d ___

Filed March 26, 2021.    No. S-20-387.

1. **Visitation: Appeal and Error.** Determinations concerning grandparent visitation rights are initially entrusted to the discretion of the trial judge, whose determination, on appeal, shall be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion.

2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

3. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

4. **Visitation: Statutes.** In Nebraska, grandparent visitation is controlled by statute.

5. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.

6. ____: ____. Subject matter jurisdiction includes a court's power to determine whether it has the authority to address a particular question within a general class or category that it assumes to decide or to grant the particular relief requested.

7. **Jurisdiction: Parties: Waiver.** The failure to join an indispensable party to a case deprives the court of subject matter jurisdiction and cannot be waived.

8. **Actions: Jurisdiction.** Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.

9. ____: ____. A court action taken without subject matter jurisdiction is void.

10. **Parties: Words and Phrases.** Necessary parties are parties who have an interest in the controversy, and should ordinarily be joined unless their interests are separable so that the court can, without injustice, proceed in their absence. The inclusion of a necessary party is within the trial court's discretion.

11. **Parties: Equity: Words and Phrases.** Indispensable parties are parties whose interest is such that a final decree cannot be entered without affecting them, or that termination of controversy in their absence would be inconsistent with equity. There is no discretion as to the inclusion of an indispensable party.

12. **Parties.** A trial court should cause an action to be properly amended to bring in the indispensable party, or dismiss it, if the amendment is not made.

13. ____. Whether a person is "indispensable," that is, whether a particular lawsuit must be dismissed in the absence of that person, can be determined only in the context of particular litigation.

14. ____. The decision whether to dismiss (i.e., the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.

15. **Constitutional Law: Due Process: Parent and Child.** The relationship between parent and child is constitutionally protected, and proceedings which impact that relationship must afford both parents due process of law.

16. **Constitutional Law: Parental Rights: Visitation.** The biological mother or father of a minor child has a constitutionally protected, fundamental right to make decisions concerning the care, custody, and control of the child, and actions for grandparent visitation may affect that right.

17. **Judgments: Jurisdiction: Collateral Attack.** A judgment entered by a court which lacks subject matter jurisdiction is void and may be attacked at any time in any proceeding.

18. **Jurisdiction.** Where a court has no jurisdiction over the subject matter of the action, all proceedings in such action are void.

19. **Judgments: Contempt.** Refusal to obey a void order or judgment is not contempt.

20. **Jurisdiction: Appeal and Error.** Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

21. ____: ____. When an appellate court is without jurisdiction to act, the appeal must be dismissed.
22. ____: ____. An appellate court has the power to determine whether it lacks jurisdiction over an appeal because the lower court lacked jurisdiction to enter the order; to vacate a void order; and, if necessary, to remand the cause with appropriate directions.
23. **Appeal and Error.** An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it.

Appeal from the District Court for Madison County: James G. Kube, Judge. Vacated and remanded for further proceedings.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Rodney J. Palmer, of Palmer Law Group, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Latonne Davis filed a petition seeking visitation with her grandchild. The district court ordered the mother, Victoria E. Moats, to allow grandparent visitation and found her in contempt when she refused. The court denied Moats' motion to vacate and strike the order granting grandparent visitation, which asserted the court lacked subject matter jurisdiction over the case. Moats argues on appeal that the court lacked jurisdiction to order visitation, because the child's biological father was an indispensable party who had not been brought into the case. We agree that the biological father was an indispensable party. As a result, the district court lacked subject matter jurisdiction. Therefore, we vacate the visitation order and the contempt order and remand the matter to the district court for further proceedings consistent with this opinion.

## BACKGROUND

This appeal involves Davis, the paternal grandmother of the minor child; Moats, the mother of the minor child; and Tate Pirnie, the biological father of the minor child. Moats and

Pirnie never married. There is no dispute that Pirnie is the biological father of the minor child or that Moats is the custodial parent of the minor child.

On May 18, 2018, Davis petitioned the district court of Madison County, Nebraska, requesting regular overnight weekend visitation, a weeklong summer visitation, regular correspondence, and regular telephone conversations with the minor child. Davis alleged that following the breakup of Moats and Pirnie, she has not been allowed any visitation or telephone contact with the minor child. Davis named Moats as the only defendant in the action, and only Moats was served a copy of the petition.

At trial, Davis testified that she shares a loving bond with the minor child and that they do various activities together. Moats testified that she did not want Davis to have overnight visitation with the minor child because of Pirnie, who, up until he was sentenced for an unrelated criminal conviction, resided with Davis. Moats explained that she did not want "anything to happen [to the child] sexually," because "[Pirnie was] getting charged for [sexual assault of a child] right now." Davis responded that although Pirnie had lived with her for the past several months, he was about to be sentenced in his criminal case and would move out of her house if he avoided incarceration. Davis explained that she also would not want Pirnie to have contact with the minor child, absent a court order.

On December 17, 2019, the district court issued an order finding clear and convincing evidence that a significant beneficial relationship exists between Davis and the minor child, that continuation of this relationship was in the best interests of the minor child, and that visitation between Davis and the minor child would not adversely interfere with Moats' parent-child relationship. Thus, the district court granted Davis' request for grandparent visitation, to include one weekend every other month; weekly telephone contact, lasting at least 30 minutes; one week in the summer; and 2 days during the last 2 weeks of December.

On January 28, 2020, Davis filed a motion for order to show cause, arguing Moats should be found in contempt for failing to comply with the court's December 2019 order. Davis alleged that she contacted Moats on December 23, 2019, in an attempt to schedule a visitation, but that Moats responded that she had not received the court's order and that she and the minor child were in Oklahoma. Davis further alleged that on December 27, Moats refused visitation because the child was sick with the flu. The court entered an order on January 29, 2020, requiring Moats to show cause as to why she should not be held in contempt.

On April 10, 2020, the court found that Moats was aware of and understood the December 2019 order. The court found Moats to be in contempt of court and ordered her to allow visitation between Davis and the minor child, pursuant to the court's previous order. The court ordered Moats to pay $500 in attorney fees.

On April 20, 2020, Moats filed a motion to vacate and strike the order granting grandparent visitation, the order to show cause, and the order finding Moats in contempt and requiring that she pay attorney fees. Moats argued that the court's orders should be stricken as void, because the court lacked subject matter jurisdiction. Moats argued, inter alia, that Pirnie was an indispensable party and that the failure to join him in the action deprived the court of subject matter jurisdiction. Moats also argued that Davis' petition was dismissed by operation of law, because Davis failed to serve Pirnie with a copy of the petition within 180 days of the filing of the petition.

The court held a hearing on May 5, 2020, to consider Moats' motion. At the hearing, Davis offered exhibits 9 and 10, the affidavits of Davis and Pirnie. Both exhibits averred that Pirnie had actual knowledge of Davis' petition for grandparent visitation and did not have any objection to its filing.

On May 8, 2020, the court overruled the motion to vacate and strike. The court noted that Moats had not complied with the visitation order or the order requiring the payment of

attorney fees, and further, the court ordered Moats to allow visitation between Davis and the minor child. Moats appeals.

## ASSIGNMENTS OF ERROR

Moats assigns, restated, (1) that the December 17, 2019, order is void and the contempt proceedings a nullity, because the district court lacked subject matter jurisdiction, and (2) that the district court erred in receiving exhibits 9 and 10 into evidence, because they were irrelevant.

## STANDARD OF REVIEW

[1] Determinations concerning grandparent visitation rights are initially entrusted to the discretion of the trial judge, whose determination, on appeal, shall be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion.[1]

[2] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[2]

[3] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[3]

## ANALYSIS

[4] In Nebraska, grandparent visitation is controlled by statute.[4] Under Neb. Rev. Stat. § 43-1802(1)(c) (Reissue 2016), a grandparent may seek visitation with his or her minor grandchild if the parents of the minor child have never been married but paternity has been legally established. Neb. Rev. Stat. § 43-1803(1) (Reissue 2016) states that if the minor child's parent or parents have never been married, a grandparent

---

[1] *Heiden v. Norris*, 300 Neb. 171, 912 N.W.2d 758 (2018).

[2] *In re Interest of Marcella G.*, 287 Neb. 566, 847 N.W.2d 276 (2014).

[3] *Omaha Expo. & Racing v. Nebraska State Racing Comm.*, 307 Neb. 172, 949 N.W.2d 183 (2020).

[4] *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019).

seeking visitation shall file a petition in the district court in the county in which the minor child resides. Subsection (2) of § 43-1803 requires that a copy of the petition be served upon the parent or parents or other party having custody of the child and upon any parent not having custody of such child by personal service or in the manner provided in Neb. Rev. Stat. § 25-517.02 (Reissue 2016).

Moats contends that since Davis failed to include Pirnie as a party in this action and failed to properly serve Pirnie with a copy of the petition, the district court lacked subject matter jurisdiction to hear the matter. Davis counters that Moats lacks standing to raise the issues of Pirnie's inclusion in the case and whether Pirnie was properly served with a copy of the petition.

## Subject Matter Jurisdiction

[5-9] Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.[5] Subject matter jurisdiction also includes a court's power to determine whether it has the authority to address a particular question within a general class or category that it assumes to decide or to grant the particular relief requested.[6] The failure to join an indispensable party to a case deprives the court of subject matter jurisdiction and cannot be waived.[7] Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.[8] A court action taken without subject matter jurisdiction is void.[9]

---

[5] *Omaha Expo. & Racing, supra* note 3.

[6] *Midwest Renewable Energy v. American Engr. Testing*, 296 Neb. 73, 894 N.W.2d 221 (2017).

[7] See *id.*

[8] *Omaha Expo. & Racing, supra* note 3.

[9] *Id.*

Moats relies upon the Nebraska Court of Appeals' decision in *Beal v. Endsley*[10] to support her contention that Pirnie is an indispensable party and that Davis' failure to join him in the action deprives the district court of subject matter jurisdiction. In *Beal*, the Court of Appeals stated that "[i]n a petition filed pursuant to § 43-1801 et seq., in that circumstance where the grandchild's parents are divorced, both parents should be made parties to the proceedings."[11] However, the language in *Beal* is not dispositive here for two reasons: (1) The portion of the opinion Moats quotes was merely dicta addressing how the case should have been captioned, and (2) the noncustodial parent entered a voluntary appearance in the matter. As a result, we find it necessary to revisit the concepts of necessary and indispensable parties.

Neb. Rev. Stat. § 25-323 (Reissue 2016) states in part:

> The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.

[10,11] In *Midwest Renewable Energy v. American Engr. Testing*,[12] we considered the application of § 25-323. In doing so, we noted that while, historically, this court has treated necessary parties the same as indispensable parties, the traditional definition of an indispensable party contained in the second clause of § 25-323 applies only to indispensable parties, not to necessary ones. We went on to explain that a "necessary party" and an "indispensable party" are two separate and distinct terms. In particular, we stated that necessary parties are parties who have an interest in the controversy, and should ordinarily be joined unless their interests are separable so that

---

[10] *Beal v. Endsley*, 3 Neb. App. 589, 529 N.W.2d 125 (1995).

[11] *Id.* at 592, 529 N.W.2d at 128.

[12] *Midwest Renewable Energy, supra* note 6.

the court can, without injustice, proceed in their absence. The inclusion of a necessary party is within the trial court's discretion.[13] Indispensable parties are parties whose interest is such that a final decree cannot be entered without affecting them, or that termination of controversy in their absence would be inconsistent with equity. However, there is no discretion as to the inclusion of an indispensable party.[14]

The difference between a "necessary party" and an "indispensable party" is not a novel concept. In fact, the U.S. Supreme Court has long acknowledged the difference between the two. In an 1854 case, *Shields et al. v. Barrow*,[15] the Supreme Court outlined three different classes of parties to a bill in equity. The Court stated that the first class was formal parties. The Court then defined the second class as "[p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it."[16] The Court explained that these persons were commonly referred to as "necessary parties," but "if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, [these persons] are not indispensable parties."[17] The Court further defined the third class as those who have "an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity

---

[13] *Id.* (citing *J.K. Dean, Inc. v. KSD, Inc.*, 709 N.W.2d 22 (S.D. 2005)). See *Reed v. Reed*, 277 Neb. 391, 763 N.W.2d 686 (2009).

[14] *Id.*

[15] *Shields et al. v. Barrow*, 58 U.S. (17 How.) 130, 15 L. Ed. 158 (1854).

[16] *Id.*, 58 U.S. (17 How.) at 139.

[17] *Id*.

and good conscience."[18] The Court noted that in a case where the rights of those before the court are inseparable from the rights of those absent, the latter are indispensable parties.[19]

[12] Later, in *Hoe v. Wilson*,[20] the U.S. Supreme Court held that a court must sua sponte invoke the indispensable party issue even though it was not raised by a party. In doing so, the Court determined that a trial court should cause an action to be properly amended to bring in the indispensable party, or dismiss it, if the amendment was not made.[21]

[13,14] More recently, in *Provident Bank v. Patterson*,[22] the U.S. Supreme Court held that whether a person is "indispensable," that is, whether a particular lawsuit must be dismissed in the absence of that person, can be determined only in the context of particular litigation. The Court went on to hold that the decision whether to dismiss (i.e., the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.[23]

Most recently, in *Morse v. Olmer*,[24] the Court of Appeals applied our indispensable party jurisprudence to the very issue before us now. In *Morse*, the appellate court determined that the noncustodial father was an indispensable party to the action for grandparent visitation due to his constitutionally protected parental rights. As such, the appellate court held that failure to join the noncustodial father as a party deprived the district

---

[18] *Id.*

[19] *Shields et al., supra* note 15.

[20] *Hoe v. Wilson*, 76 U.S. (9 Wall.) 501, 19 L. Ed. 762 (1869).

[21] *Id.*

[22] *Provident Bank v. Patterson*, 390 U.S. 102, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968).

[23] *Id.*

[24] *Morse v. Olmer*, 29 Neb. App. 346, 954 N.W.2d 638 (2021).

court of jurisdiction to consider the grandparents' complaint for visitation.

[15,16] Here, we, too, recognize that the relationship between parent and child is constitutionally protected, and proceedings which impact that relationship must afford both parents due process of law.[25] Though the record before us is not clear, none of the parties contest that Pirnie has been determined to be the biological father of the minor child. As such, he has a constitutionally protected, fundamental right to make decisions concerning the care, custody, and control of the child, and actions for grandparent visitation may affect that right.[26] Therefore, we find the district court lacked the subject matter jurisdiction to make a determination as to Davis' grandparent visitation rights without giving Pirnie the opportunity to participate in the proceedings.

Additionally, as mentioned above, § 43-1803(2) requires that a copy of the petition be served upon the parent or parents or other party having custody of the child and upon any parent not having custody of such child. We agree that it is clear from the language of § 43-1803 that both parents should be served with a copy of the petition in an action for grandparent visitation. As such, Pirnie had a statutory right to be served with a copy of the petition and given notice of the trial in the matter.

Davis, through the affidavits received as exhibits 9 and 10, contends that Pirnie was made aware of the proceedings and received a copy of the petition. Additionally, Pirnie's affidavit states that he did not object to Davis' request for visitation. However, Pirnie's affidavit was executed in April 2020 and makes no indications that he had actual notice of the proceedings while they were occurring. Further, being aware of the proceedings or receiving a copy of the petition does not

---

[25] *Id.* See, also, *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978).

[26] See *State on behalf of Tina K. v. Adam B.*, 307 Neb. 1, 948 N.W.2d 182 (2020) (citing *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)).

equate to receiving personal service of the petition as required by statute.

[17] Since Pirnie was not included in the proceedings, the district court lacked subject matter jurisdiction to hear Davis' petition for grandparent visitation. As a result, the December 17, 2019, order granting grandparent visitation is void. A judgment entered by a court which lacks subject matter jurisdiction is void and may be attacked at any time in any proceeding.[27]

[18,19] Since the order granting grandparent visitation is void, the order finding Moats in contempt of that order is also void. The rule is fundamental that where the court has no jurisdiction over the subject matter of the action, all proceedings in such action are void.[28] The rule is likewise well settled that refusal to obey a void order or judgment is not contempt.[29]

[20-22] Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[30] When an appellate court is without jurisdiction to act, the appeal must be dismissed.[31] However, an appellate court has the power to determine whether it lacks jurisdiction over an appeal because the lower court lacked jurisdiction to enter the order; to vacate a void order; and, if necessary, to remand the cause with appropriate directions.[32]

Vacating the December 2019 order granting grandparent visitation and the April 2020 order finding Moats in contempt does not dispose of this action. The matter remains

---

[27] *VonSeggern v. Willman*, 244 Neb. 565, 508 N.W.2d 261 (1993).

[28] *Wolski v. Lippincott*, 147 Neb. 944, 25 N.W.2d 754 (1947).

[29] *Id.*

[30] *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017).

[31] *Id.*

[32] *Id.*

pending before the district court unless Moats' other arguments have merit.

## Untimely Service

Moats also argues that since Pirnie was not served within 180 days of the commencement of Davis' action, the matter was dismissed by operation of law.[33] Under § 25-217(2), each defendant in an action must be properly served within 180 days of the commencement of the action. Subsection (3) of § 25-217 states that if any defendant is not properly served within the time specified in subsection (2), the action "*against that defendant*" is dismissed by operation of law. (Emphasis supplied.)

Contrary to Moats' contention, nothing within § 25-217 states that the action is dismissed against all the defendants or that the action stands dismissed as a whole. Further, we decline Moats' invitation to expand § 25-217 to include dismissal of the action upon the failure to serve an indispensable party who was not originally included in the action. As such, this assignment of error is without merit.

## Remaining Issues

[23] Moats also argues the district court erred in receiving exhibits 9 and 10 into evidence, because they were irrelevant. Exhibits 9 and 10 were received into evidence at the hearing on Moats' motion to vacate the court's judgment and were offered to show that Pirnie was aware of the proceedings and did not object to Davis' request for grandparent visitation. However, because we have determined that the court lacked jurisdiction to hear this matter, we decline to consider this assignment of error. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it.[34]

---

[33] See Neb. Rev. Stat. § 25-217 (Cum. Supp. 2020).

[34] *City of Sidney v. Municipal Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018).

## CONCLUSION

Because the biological father was an indispensable party to the action for grandparent visitation, but was not included in the proceedings, the district court lacked subject matter jurisdiction to enter an order granting grandparent visitation, and thus, that order is void and is hereby vacated. Further, because the order granting grandparent visitation is void, the order finding Moats in contempt of the order is also void and is hereby vacated. Therefore, since this appeal is taken from void orders, we lack jurisdiction to consider the same. Therefore, the matter is remanded to the district court for further proceedings consistent with this opinion.

Vacated and remanded for
further proceedings.